tongues, and this can be eliminated by shortening the chain, as was testified by several witnesses.

The toggle was invented for the purpose of facilitating the unloading of logs at the mills. The hook is released from the log chain by striking the ring from the end of the tongue. The nearer the ring to the end of the tongue the easier is the operation. To the man operating a toggle the danger, if any, is from the slipping of the ring and the consequent release of the chain. When this occurs there is no occasion for the operator to leave the shelter of the car and rush out where logs may fall upon him.

After the decedent was injured, the engineer of the log train took from the cars a long and a short toggle, to be used as evidence on the trial of a prospective damage suit against the defendant. Neither of these toggles were produced on the trial of the case. It is explained that the witness who had them in his possession forgot to bring them to the county seat.

The deceased was a man of mature years, and there is no evidence of his alleged inexperience in the work he undertook to perform beyond the fact that he had been operating the toggles five or six days.

Our learned Brother of the district court heard the witnesses and decided this case in favor of the defendant. After a careful consideration of the facts, we are unable to reach a different conclusion.

Judgment affirmed.

---

(55 South. 472.)

No. 18,858.

STATE v. MAROUN.

(May 22, 1911.)

*(Syllabus by the Court.)*

1. INTOXICATING LIQUORS (§ 134*) — "MALT LIQUORS."

The term "malt liquors," as used in Act No. 4, Extra Session of 1910, to define the meaning of the term "grog or tippling shop," in prohibition districts, must be construed as including only malt liquors that are intoxicating. The intent of the Legislature to penalize the sale of nonintoxicating beverages will not be presumed, especially where no such intent is expressed in the title of the act.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 142–144; Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 5, pp. 4314, 4315.]

2. STATUTES (§ 114*)—TITLE OF ACT—INTOXICATING LIQUORS.

The object or purpose of every law must be expressed in its title. Const. art. 31. The sale of nonintoxicating liquors is not germane to the definition of a grog or tippling shop, a place for the sale of intoxicating liquors.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 114.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Joe Maroun was convicted of an illegal sale of liquor, and appeals. Reversed, and information quashed.

Scheen & Blanchard and Alexander & Wilkinson, for appellant. Walter Guion, Atty. Gen., and James M. Foster, Dist. Atty. (T. J. Looney and G. A. Gondran, of counsel), for the State.

LAND, J. The accused was convicted and sentenced under an information charging that he "unlawfully did keep a grogshop and did sell therein a certain malt liquor known as 'Hiawatha' without obtaining a license from the police jury of the parish of Caddo or the municipal authorities of the city of Shreveport, said parish and city being places in which the sale of intoxicating and malt liquors is prohibited, contrary to the form of the statute," etc.

The information was filed under section 910 of the Revised Statutes, as amended by Act No. 4 of the Extra Session of 1910. The accused demurred to the information as charging no offense under the laws of the state, and assailed the amendatory statute as violative of articles 31, 32, 75, and 181 of the Constitution. The accused also requested

the trial judge to rule that the sale of nonintoxicating malt liquors constituted no offense against the criminal laws of the state. The demurrer was overruled, and the requested instructions were refused. Act No. 4 of 1910 reads as follows:

"To define the meaning of the term grog or tippling shop, as used in the statutes of the state of Louisiana, in those parishes, wards, cities, towns or villages where the sale of intoxicating liquors are prohibited.

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that in those parishes, wards, cities, towns or villages, where the sale of intoxicating liquors is prohibited the term grog or tippling shop as used in the statutes of the state of Louisiana is hereby declared to mean any shop or place where intoxicating, spirituous, vinous or malt liquors are sold or served at retail by any person, association or corporation who charge for said liquors or for service thereof, or charge for providing lockers or other places for conveniently handling or using said liquors, or for icing said liquors, or shall make any charge of whatever nature for the handling, keeping, serving or furnishing accommodations for persons using or drinking said liquors.

"Sec. 2. It shall be no defense that said liquors were furnished by persons other than the person or persons accused."

The prosecution frankly admits that, prior to the enactment of said statute, the local prohibition laws did not forbid or penalize the sale of nonintoxicating malt liquors. It is to be noted that the act has no force or effect except in *prohibition* districts, and purports merely to define the meaning of the term "grog or tippling shop," as used in the statutes of the state. The enacting clause amplifies the term so as to include "any place where intoxicating, spirituous, vinous or malt liquors are sold or served at retail," etc.

[1] It is argued in behalf of the state that the term "malt liquors" includes beer of all kinds, whether intoxicating or not. On the other hand, it is contended by counsel for the accused that the term should be construed according to the legislative intent, which was to prevent the evil of intemperance caused by the use of intoxicating liquors.

Section 1211 of the Revised Statutes empowers police juries and municipal authorities to make such rules and regulations for the sale or the prohibition of the sale of intoxicating liquors as they may deem advisable, and to grant and withhold license from drinking houses within the limits of the parish as a majority of the legal voters of the parish may determine. See, also, Act No. 221 of 1902.

In 1908 the legal voters of the parish of Caddo voted against the sale and the licensing of the sale of intoxicating liquors in drinking houses or shops within the limits of said parish, on and after the 1st day of January, 1909.

Under our local option system, the question of prohibiting the sale of *intoxicating* liquors is left to the voters of the political subdivisions of the state; but no power has been conferred on them to regulate or to prohibit the sale of *nonintoxicating liquors*.

The contention of the prosecution is based on the assumption that the lawmaker, in the enactment of Act No. 4 of Extra Session 1910, intended, without consulting the voters, to extend the local prohibition laws to the sale of nonintoxicating malt liquors. Such an assumption is opposed to the whole theory of our local option laws, and would convict the Legislature of the attempt, by indirection, to prohibit the sale of nonintoxicating drinks. In a number of cases, the term "malt liquor" used by the lawmaker in reference to the sale of liquors in local option territory has been construed as including only liquor of an intoxicating quality. Ex parte Gray (Tex. Cr. App.) 83 S. W. 828; Hardwick v. State (Tex. Cr. App.) 114 S. W. 832; Bowling Green v. McMullen, 134 Ky. 742, 122 S. W. 823, 26 L. R. A. (N. S.) 895; Roberts v. State, 4 Ga. App. 207, 60 S. E. 1082.

In Roberts v. State the court said:

"The intention of the Legislature in enacting the prohibition statute was to prevent the evil

of intemperance caused by the use of intoxicating liquor as a beverage. The law should be interpreted so as to accomplish this beneficent purpose. There should be a reasonable construction equally removed, on the one hand, from that extreme strictness which would make it unpopular or ridiculous and difficult of enforcement, and, on the other, from that latitude which would render it ineffective."

There is no law of this state which requires a *special* license for the sale of nonintoxicating liquors. Their sale without a license has not been made a criminal offense.

[2] If the intent of the lawmaker in the enactment of Act No. 4 of the Extra Session of 1910 was to penalize the sale of nonintoxicating malt liquors, then such a purpose was not expressed in the title, which is restricted to the definition of "grog or tippling shop," a place where intoxicating liquors are sold. Article 31 of the Constitution provides that every law shall have but one object which shall be expressed in its title. The said act is merely explanatory of terms used in prior statutes relating to the sale of intoxicating liquors. The sale of *nonintoxicating* liquors is not germane to the object expressed in the title. The evident purpose of the act was to extend the meaning of the term "grog or tippling shop" to locker clubs and other places where intoxicating liquors are *served*, or *kept* for *consumption*. This purpose was a matter of common knowledge, and was deemed of sufficient importance to include the passage of the act among the objects justifying the call, for an extra session of the General Assembly.

If we were to assume that the lawmaker intended to penalize the sale or service of nonintoxicating malt liquors, we would be constrained to declare the act unconstitutional because no such object is expressed in the title. However, we have no reasons to believe from the language of the statute that the lawmaker had any such intention.

The title and the body of the act show

128 LA.—27

that the lawmaker was dealing with the subject of the prohibition of the sale of intoxicating liquors. The intent to deal with nonintoxicating liquors is deduced solely from the use of the words "malt liquors" in connection with other terms clearly denoting intoxicating liquors. As "malt liquors" may mean beer that will intoxicate, as well as nonintoxicating brews, and as the former construction is in harmony with the general purpose of the statute, and a double purpose is inadmissible, we are of opinion that the sentence below should be reversed.

It is therefore ordered that the sentence below be annulled, avoided, and reversed, and it is now ordered that the information be quashed, and that the accused be discharged and his bond canceled.