SOMMER VILLE, J.
Defendant was charged with and found guilty of maintaining a public nuisance in the city of Shreveport, by keeping a “blind tiger,” and he appeals.
There are three bills of exceptions found in the record, all to the same effect, and they will be considered together.
Defendant was charged, April 17, 1913, with maintaining a public nuisance by keeping a “blind tiger” on the 24th day of February, 1913, contrary to the ordinance of the city of Shreveport, specially ordinance No. 5, which is made part of the bills of exceptions, and it is found in the record.
The first objection to the charge was that it was duplicitous; but this objection has been abandoned.
Second. That said ordinance No. 5 is illegal and of no effect, for the reason that it is ultra vires of the powers of the council; and that it is unconstitutional, null, and void, in that (a) it attempts to create an offense which the city council had no right to do; (b) that in it the council attempts to create rules of evidence, which is beyond its power and authority.
The first section of the ordinance declares:
“That what is commonly known as a ‘blind tiger’ within the limits of the city of Shreveport, Louisiana, is hereby declared to be a public nuisance.”
The following sections proceed with provisions for the abating of said public nuisances.
The council of the city of Shreveport did not attempt, under ordinance No. 5, to create an offense; it simply directs that a certain public nuisance shall be abated; and it provides for a penalty to be imposed by the courts tipon the person maintaining said nuisance.
[1] In the early part of 1908 the police jury of the parish of Caddo, in accordance with a vote taken by the people on the subject, adopted an ordinance prohibiting the sale of intoxicating liquors in drinking houses and shops within the limits of the parish of Cad-do, on and after the 1st day of January, 1909. That ordinance has been before us, and declared to be legal. Hagens et al. v. Police Jury of Caddo Parish, 121 La. 634, 46 South. 676. The city of Shreveport, being located in the parish of Caddo, was and is in prohibition territory; and no one can there lawfully engage in the sale of intoxicating liquors in drinking houses and shops.
[2, 3] In line with the ordinance of the police jury, the common council of the city of Shreveport passed ordinance No. 5, now under consideration, and therein undertook to define a “blind tiger”; but this definition was tautological, and therefore unnecessary. Crowley v. Ellsworth, 114 La. 308, 38 South. 199, 69 L. R. A. 276, 108 Am. St. Rep. 353. The term is known and recognized generally. It is found in the Standard Dictionary and in Words and Phrases. The Standard Dictionary defines a “blind tiger” to be a place where intoxicants are sold on the sly; and “sly” means artfully, dexterous in doing things secretly; cunning in evading notice of detection.
[4, 5] “Blind tigers” have been declared to be public nuisances affecting the whole community, and, as such, they may be abated. Town of Ruston v. Fountain, 118 La. 53, 42 South. 644; Legg v. Anderson, 116 Ga. 401, 42 S. E. 720; Lofton v. Collins, 117 Ga. 434, 43 S. E. 708, 61 L. R. A. 150; Rush v. Commonwealth (Ky.) 47 S. W. 586.
It is a well-recognized fact that, after the sale of intoxicating liquors has been prohibited, either by special act or by vote of the people, all sorts of contrivances are resorted to to evade the operation of the law; and the places selling intoxicating liquors under these conditions are known as “blind tigers”; they are devices by which a liquor seller seeks to ply his vocation, and at- the same time to conceal his criminal agency in the selling.
There can be no question of the right of *495 the people of Caddo parish to decide that intoxicating liquors cannot be sold in that parish. Town of Ruston v. Fountain, 118 La. 53, 42 South. 644; Hagens v. Police Jury of Caddo (Parish, 121 La. 634, 46 South. 676.
The Supreme Court, in Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, held that a statute of Kansas which prohibits the manufacture and sale of intoxicating liquors in that state is valid, and that the destruction, in the exercise of the police power of the state, of property used, in violation of law, in maintaining a public nuisance is not a taking of property for public use, and does not deprive the owner of it without due process of law. Such person is a violator of the law, and not an innocent owner, who is protected in his rights by the Constitution of the United States.
“The power which the states have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not, and, consistently with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community.”
In the case of Purity Extract & Tonic. Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, the court say:
“It is also well established that, when a state exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective.”
And in that case, the court held that the state Legislature of Mississippi had the right to prevent the sale of malt liquors, saying:
“That the opinion is extensively held that a general prohibition of the sale of malt liquors, whether intoxicating or not, is a necessary means to the suppression of trade in intoxicants sufficiently appears from the legislation of other states and the decisions of the courts in its construction.” (Citing many authorities to that effect.)
In the case of Kennedy v. Phelps, Street Commissioner of New Orleans, 10 La. Ann. 227, we say that:
“The power to abate nuisances is a portion of police authority, necessarily vested in the corporation of all populous towns.”
' And we there. cite many authorities in support of that proposition. See, also, Mayor v. Gerspach, 33 La. Ann. 1011. We there say:
“We think the right exists in the council of a municipal corporation to determine what, in its nature and use, it deems a nuisance, and to direct its removal or discontinuance under the penalties which it is, by legislative authority, authorized to impose or inflict.”
See, also, State v. Heidenhain, 42 La. Ann. 483, 7 South. 621, 21 Am. St. Rep. 388, involving the right of the council of the city of New Orleans to prohibit smoking on street ears. We there say:
“The authority to abate nuisances is a part of the police power vested in all large and populous cities. To determine what is a nuisance is a question of fact.
_ “The city council of New Orleans is to a limited extent clothed with legislative authority and it is vested with that discretion, within its powers, common to all legislative bodies.
“Within the exercise of this legislative discretion, it has the authority to determine what is a nuisance, and to enact the necessary ordinances to suppress it”
We say in City of Crowley v. Ellsworth, 114 La. 308, 38 South. 199, 69 L. R. A. 276, 108 Am. St. Rep. 353, that:
“An ordinance which makes an act unlawful, by necessary implication declares it of a noxious character, and any further declaration on the subject would be mere useless tautology.”
That a “blind tiger,” or selling of intoxicating liquors in prohibition territory, is a public nuisance requires no evidence to support it.
The Supreme Court say, in Northwestern Fertilizer Co. v. Hyde Park, 97 U. S. 659, 24 L. Ed. 1036, in part:
“That a nuisance of a flagrant character existed, as found by the court below, is not controverted. We cannot doubt that the police *497 power of the state was applicable and adequate to give an effectual remedy. That power belonged to the states when the federal Constitution was adopted. They did not surrender it, and they all have it now. It extends to the entire property and business within their local jurisdiction. Both are subject to it in all proper cases. It rests upon the fundamental principle that every one shall so use his own so as not to wrong and injure another. To regulate and abate nuisances is one of its ordinary functions. The adjudged cases showing its exercise where corporate franchises were involved are numerous.”
The trial court correctly held that the ordinance of the city of Shreveport did not create an offence; that it simply declared a “blind tiger” to be a public nuisance; and that it had legally passed provisions for the suppression of such nuisance. Section 10, Act No. 158 of 1898, p. 295.
In the case of State v. Harper, 42 La. Ann. 312, 7 South. 446, and Police Jury of Lincoln Parish v. Harper, 42 La. Ann. 776, 7 South. 716, we hold, in effect, that the police jury of Lincoln parish had not the right to prohibit the sale of liquor in that parish. But that case was decided in 1890, when police juries had not been given authority to inflict penalties such as is given to the city council of Shreveport by section 10 of Act No. 158 of 1898, p. 295. Since that decision was rendered, the Legislature has granted power to the police juries to penalize the violation of every ordinance, by Act No. 315 of 1908, p. 481; and the Harper decision is no longer an authority. See, also, Luchini v. Police Jury, 126 La. 972, 53 South. 68, 21 Ann. Cas., 59.
[6, 8] The next charge against the ordinance is that it attempts to create rules of evidence which is beyond the power and authority of the council. It is aimed at section 4 of the ordinance which, among other things, provides that, when intoxicating liquors are found in any house, store, room, or any other place where they are kept illicitly, or for the purpose of sale, barter, exchange, trade, or giving away as a beverage, or when they are kept in a place where near beer is displayed for sale or sold, or when they are kept in a place where gambling is permitted, shall be prima facie evidence of the maintaining of a “blind tiger.”
It may well be that the council has thus gone too far in adopting a rule of evidence; but we are not permitted to pass upon the sufficiency of evidence in criminal cases, which power is reserved to the jury, or to-the trial judge. Defendant has attached all the evidence taken in the case to one of his bills of exceptions, but, as just stated, we are not at liberty to examine that evidence with a view of determining whether it is sufficient for conviction or not. The ordinance declares the keeping of intoxicating liquors for sale in connection with near beer-saloons, etc., to be a public nuisance; and we cannot conceive that a court would have found defendant guilty of maintaining a public nuisance, unless the evidence showed that he did keep intoxicating liquors for sale in connection with his near beer saloon.
We may add, in passing, that a reading-of the evidence in the record shows that the trial judge is fully sustained in his finding on the facts of the case. It shows a persistent and .energetic violation of the law in the sale of liquors in prohibition territory.
Article 96 of the Constitution gives to the-General Assembly power to abolish justices of the peace courts in wards of more than 5,000 inhabitants, and to create in their stead courts with such civil jurisdiction as. is now vested in justices of the peace, and with criminal jurisdiction which shall not extend beyond the trial of offenses not punishable by imprisonment at hard labor under the laws of this state, and the violation of municipal and parochial ordinances, and the holding of preliminary examinations in cases not capital. The General Assembly passed act No. 103 of 1898, p. 129, abolishing the offices of justices of the peace and *499 constables in the fourth ward of the parish of Oaddo, embracing the city of Shreveport, and established a court of inferior jurisdiction, styled the “City Court of the City of Shreveport,” which court is vested with civil jurisdiction, as had been vested in justices of the peace, and criminal jurisdiction of offenses committed in the ward and not punishable by imprisonment at hard labor, and of violations of the ordinances of the city of Shreveport, and of the ordinances of the police jury of the parish of Caddo, within the limits of said ward, with power to arrest, examine, commit, and discharge in all cases not capital.
The Legislature has not attempted to give to the council of the city of Shreveport any authority over the city court of Shreveport, or to direct or control the manner or method of procedure in that court, or to define or to make rules of evidence to be applied there.
[7] The only prima facie evidence of the sale of liquors, in so far as we are informed, is that established by the Legislature in Act No. 40 of 1908, p. 40, wherein it is provided:
“That the certificate of the internal revenue collector, or his deputy, showing that an internal revenue license or permit was issued as named in section one of this act when introduced in evidence shall be prima facie evidence that the person to whom such United States revenue license or permit was issued is guilty of keeping a grog or tippling shop_ or retailing spirituous or intoxicating liquors in violation of law.”
Section 4 of the ordinance is ultra vires null and void.
The next objection urged by defendant is that the evidence against him was—
“obtained through force and a search warrant that was illegally issued, and the evidence given was illegally forcing defendant to give evidence against himself, contrary to the law and constitutional guarantee in favor of the citizens of the states.”
The transcript shows that a warrant was issued in this case on April 24, 1913; but there is no return made thereon, and it would appear that it has never been served. It is very evident that the evidence in the record, and upon which defendant was convicted, was not obtained under that warrant, for the reason that the affidavit upon which it was based was filed April 17, 1913, for maintaining a nuisance, as stated in the charge against defendant, on February 24, 1913, and the testimony shows that the evidence was obtained at that time, prior to the issuance of the warrant complained of. There is nothing in this objection.
Whether the evidence obtained February 24, 1913, was legally or illegally obtained cannot be reviewed at this time. State v. Renaud, 50 La. Ann. 662, 23 South. 894; State v. Jerry, 4 La. Ann. 190.
[9] The next objection to the ordinance is that:
“It is illegal in providing for a search of premises; no such power being in the city council; and, even if in the council, then it is beyond the constitutional limitation on search warrants, as the same is provided for without probable cause being first shown,” etc.
We have just seen that the warrant in this record was not served, and that it was only issued after the search had been made in the previous February, and after the charge had been regularly made and filed against defendant. He (defendant) cannot be heard to complain of this section of the ordinance. He has not been injured thereby, as no search warrant was executed, although one had been applied for.
We may add, though, that when.the city counsel, in section 3 of ordinance No. 5, provided that “it shall be the duty of the city judge to at once issue a warrant directing the chief of police or sheriff to go into such place or places and ascertain the truth,” etc., of affidavits made by reputable persons that intoxicating liquors are being illegally kept in any house, store, room, or any other place within the corporate limits of the city of Shreveport, for the purpose of illicitly disposing of same, the council exceeded its authority. The only act to which we have *501 been referred in which the Legislature authorizes a judge or justice of the peace to issue such a warrant is in search of stolen property. R. S. 2068. The judge of the city court is then without authority to issue a search warrant for any purpose not indicated by the Legislature. Therefore that portion of section 3 of the ordinance which directs the judge of the city court to issue a search warrant is ultra vires, null and void.
Counsel for the city have referred us to cases involving laws passed by the Legislature, with reference to inspection, in the interest of public health; but they are without application on the question of unreasonble searches. That point was not involved; and what was done in those cases was in compliance with acts of the Legislature, and not merely ordinances of a city council. The reference to the New York cases is likewise inapplicable. A search warrant in that state is of broader scope than the Legislature of Louisiana has made it.
The Code of Criminal Procedure of New York, § 791, defines a search warrant to be:
“An order in writing, in the name of the people, signed by a magistrate, directed to a peace officer, commanding him to search for personal property, and bring it before the magistrate.”
And section 792 provides upon what grounds it may be issued, namely:
“(1) When the property was stolen or embezzled. * * *
“(2) When it is used as the means of committing a felony. * * *
- “(3) When it is in the possession of any person with the intent to use it as the means of committing a public offense, or in the possession of another, to whom he may have delivered it for the purpose of concealing it, or preventing its being discovered.”
People v. Noelke, 1 N. Y. Cr. R. 252, 268.
The next charge is:
“That the council can only fix penalties for the illegal sale of intoxicating liquors,” as the vote of the people of Caddo went no further than to forbid such sale, “and the fixing of a penalty by having in possession intoxicating liquors is beyond its power.”
This objection has been answered before. The council has declared in the ordinance that:
“Any house, store, room, or any other place where intoxicating liquors are kept illicitly (that is in violation of law), or kept for the purpose of sale, barter, exchange, trade, or giving away as a beverage, or when it is kept in a place where near beer is displayed for sale, or when it _ is kept in a place whore gambling is permitted, shall be deemed a ‘blind tiger.’ ”
It has further provided that a “blind tiger” is a public nuisance, and it has provided penalties for its abatement; all in conformity to law.
[11] The word illicit has a well-defined meaning; it means unlawful. It has long been used in connection with the unlawful selling of liquors, the unlawful distilling of liquors, unlawful sexual intercourse, etc. The clear object of the ordinance is to suppress “blind tigers,” which the ordinance declares to be public nuisances, and which the courts of various states have termed public nuisances. Town of Ruston v. Fountain, 118 La. 53, 42 South. 644.
We have confined this decision to the right of the municipality to declare a “blind tiger” to be a public nuisance, and to abate it by penalizing it. Were we to discuss the right of the municipality to suppress illegal sales <^f liquor we would find that such right has also been recognized.
Act No. 8 of 1896, p. 8, authorizes city councils to pass ordinances relative to the sale of liquor without first obtaining a license. Sections 10 and 11 of the charter of Shreveport (Act No. 158 of 1898, p. 301) gives the council lull authority to pass all necessary and proper ordinances, with penalties for violations thereof. And sections 1211 and 2778, Revised Statutes, as amended by Acts No. 76 of 1884, p. 98, and No. 221 of 1902, p. 451, provide that police juries and municipal authorities of villages, towns, and cities may regulate or prohibit the sale of intoxicating liquors. The council of the city *503 of Shreveport has prohibited the sale of intoxicating liquors in that city, as appears from the admission as follows in the Dehan Case, 134 La. 313, 64 South. 124, submitted with this case:
“It is admitted that prohibition was voted in the parish of Caddo, including the city of Shreveport, and that prohibition ordinances were passed by the police jury, and by the city council. The ordinance by the city council prohibits the sale of intoxicating liquors in the city of Shreveport with a license, and imposes a penalty of a fine of not over $100, or not over ten days in jail, or both, at the discretion of the court.”
Section 1214, Revised Statutes, provides that:
“It shall bo the duty of the police juries of the several parishes, the municipal authorities of the towns and cities, to adopt such regulations as may be necessary for the purpose of carrying out the provisions of this act.”
“To regulate the police of a tavern is not merely to adopt a regulation, but also to enforce the regulation after it is adopted. It would hardly be contended that a municipality charged with the duty of regulating the police of its taverns could not employ officers to see that the regulations adopted for the good order of the taverns were carried out. The offering of a reward for the conviction of offenders is in reality nothing more than the accomplishing of the same thing by a different means.
“This would be, we think, a too narrow construction.”
Carnes v. Police Jury, 110 La. 1011, 35 South. 207.
See Ruston v. Fountain, 118 La. 53, 42 South. 644; Purity Extract Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184; 35 Cyc. 1274; and section 1211, R. S., specially confers that right with reference to the regulation and prohibition of the sale of intoxicating liquors on a vote of the people.
Defendant’s stock of intoxicating liquors were not seized in this case; but, there can be no doubt of the right of the state to authorize court officers to summarily seize liquors which are being concealed and sold in violation of a prohibitory statute; and it may authorize the issuance of a search warrant for the purpose of seizing such liquors; but a municipality may not authorize such search and seizure in the absence of legislative action to that end.
“Illegal sales of intoxicating liquors punishable under the general law may also be made punishable by ordinance. The legislature may authorize a municipality to impose new additional penalties and punishments for acts already penal by the general laws of the state, and may provide a different punishment from that attached' by the general laws.” Eng. Ency. of Law (2d Ed.) vol. 17, p. 282.
We hold to the same effect in State v. Fourcade, 45 La. Ann. 717, 13 South. 187, 40 Am. St. Rep. 249; City of Monroe v. Hardy, 46 La. Ann. 1232, 15 South. 696; Town of Opelousas v. Giron, 46 La. Ann. 1364, 16 South. 190; Dillon on Municipal Corporations, vol. 1, § 25; Am. & Eng. Ency. (2d Ed.) pages 145 to 148, and 151 to 155.
[10] Although we have reviewed the ordinance and other evidence in the record, and found that the ordinance contains objectionable and illegal provisions, the ordinance is good and valid in part, and is sustainable, except as to the objectionable parts, which we have pointed out.
Defendant has been found guilty of violating section 1 of the ordinance, which is valid, and the penalty imposed is in accordance with section 2, which is also valid.
Judgment affirmed.