(67 South. 206)

No. 20953.

STATE v. QUINN.

(Jan. 11, 1915.)

(Syllabus by the Court.)

1. INTOXICATING LIQUORS ⬉143 — "BLIND TIGER"—ELEMENTS OF OFFENSE.
   The purpose of Act No. 146 of 1914 is to penalize the keeping of a "blind tiger," and a "blind tiger" is defined by the act "to be any place in those subdivisions of the state where the sale of spirituous, malt or intoxicant liquors are kept for sale, barter, exchange or habitual giving away as a beverage in connection with any business conducted at such place;" and the keeping of the "place" in the subdivisions mentioned, and of the liquors, "for sale, barter," etc. "in connection with any [other] business conducted at such place," are essential ingredients of the offense of "keeping a blind tiger," and should be set forth in a bill of information purporting to charge that offense.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 152; Dec. Dig. ⬉143.

For other definitions, see Words and Phrases, First and Second Series, Blind Tiger.]

2. INTOXICATING LIQUORS ⬉132 — WRONGFUL SALE—STATUTES—APPLICATION.
   Neither Act No. 107 of 1902, which grades the offense of selling intoxicating liquors, without the previous obtention of a license, with reference to the amounts required to be paid for such licenses, nor Act No. 176 of 1908 (known as the "Gay-Shattuck Law"), has any application in communities where the issuance of liquor licenses is prohibited. On the other hand, section 910 of the Revised Statutes (as amended and re-enacted), penalizing the offense of keeping a grog or tippling shop or retailing spirituous liquor without the previous obtention of a license, and Act No. 4 of 1910 (Ex. Sess.), defining "grog or tippling shops," are applicable where no liquor licenses can be issued, but are inapplicable where such licenses can be issued, and where, as a consequence, the offense of selling liquor without a license must be, and is, graded with reference to the amounts paid for the licenses.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 141; Dec. Dig. ⬉132.]

Land, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

F. P. Quinn was convicted of unlawfully keeping a blind tiger, and he appeals. Reversed, and defendant discharged.

Lewell C. Butler, of Shreveport, for appellant. R. G. Pleasant, Atty. Gen. (Wm. A. Mabry, Dist. Atty., of Shreveport, and G. A. Gondran of New Orleans, of counsel), for the State.

Statement of the Case.

MONROE, C. J. Defendant was convicted upon the charge that he "unlawfully did keep a 'blind tiger,' by keeping intoxicating

liquors for sale, barter, exchange, or giving away as a beverage, at the Kansas City Southern Hotel, Shreveport, Caddo Parish, La., where the sale of intoxicating liquor is prohibited, contrary to the form of the statute," etc. He was sentenced "to pay a fine of $500, and costs, and to serve six months in the parish prison, and, in default of payment of said fine to serve six months additional in said parish prison," etc.

From which conviction and sentence he has appealed, and presents his case to this court upon a single bill of exceptions, reading (so far as it need be quoted) as follows:

"Be it remembered that prior to the pleading herein (the defendant afterwards refused to plead, and a plea of not guilty was entered) the defendant demurred, and moved to quash the information herein filed; defendant setting up that the information disclosed no crime or misdemeanor known to the laws of Louisiana, especially attacking the constitutionality of Act No. 146 of 1914, as being violative of the state and federal Constitutions. And further demurred and said that the information disclosed no crime, because it was not charged that the intoxicating liquors were so kept 'in connection with any business conducted at said place'; that defendant demanded to be informed what business was being operated in connection with the keeping of said intoxicating liquors, which information was not set up in said charge, nor furnished the defendant. Which said demurrers were overruled, and to which overruling defendant excepted and reserved the bill," etc.

The judge a quo, citing City of Shreveport v. Maroun, 134 La. 490, 64 South. 388, and other cases decided by this court prior to the passage of Act No. 146 of 1914, held, in effect, that a "blind tiger" is a device by which a liquor dealer seeks to ply his vocation, and, at the same time, to conceal his criminal agency in the selling; that they are public nuisances per se, and may be abated; and that the act of 1914 should be construed to mean that the offense of keeping a blind tiger, thereby defined and denounced, may be completed by the sale, barter, exchange, or giving away as a beverage, in prohibition territory, of intoxicating liquors, whether in connection with other business or apart therefrom.

### Opinion.

[1, 2] Of the various statutes concerning the sale of intoxicating liquors which were enacted prior to the passage of Act No. 146 of 1914, sections 1211 and 2778 of the Revised Statutes, and Acts Nos. 76 of 1884 and 221 of 1902, amendatory of those sections, deal with the question of the power of the police juries and municipal authorities to grant or withhold licenses as may be determined by the legal voters of their respective parishes, wards, and municipalities; sections 910 and 1215 of the Revised Statutes, and Acts Nos. 83 of 1886 and 66 of 1902, amendatory of section 910, declares it to be a misdemeanor, the minimum penalty for which is a fine of $100, to keep a grog or tippling shop or to retail spirituous or intoxicating liquors without previously obtaining a license; Act No. 40 of 1908 makes the certificate of the collector, to the effect that an internal revenue license has issued therefor, prima facie evidence that the holder is keeping a grog or tippling shop; Act No. 46 of 1906 declares it to be an offense to solicit or receive orders for the purchase of spirituous or intoxicating liquors in any community where the retailing of such liquors is prohibited; Act No. 4 of 1910 (Ex. Sess.) defines the term "grog or tippling shop," as used in the other statutes, when applied in communities where the sale of intoxicating liquors is prohibited; Act No. 107 of 1902 (section 8, p. 163) grades the offense of retailing liquor without a license, with reference to the amount required to be paid for the license; and Act No. 176 of 1908 ("Gay-Shattuck Law") purports to regulate and license the business of conducting barrooms, cabarets, etc., where intoxicants are sold, in communities where the licensing of such establishments is permitted. Construing the provisions of Act No. 107 of 1902, grading the penalty for selling liquor without a license with reference to the amount required to be paid

for the license, and dealing with the argument that, in communities where no licenses are permitted, there can be no penalty, it had been held by this court (prior to the passage of the act of 1914) that Act No. 107 of 1902 and Act No. 176 of 1908 (by its terms) find applications only in those communities in which licenses may be issued, whilst the other legislation applies in prohibition territory. State v. Hageman, 123 La. 810, 49 South. 530; State v. Bailey, 124 La. 152, 49 South. 1011; State v. Donato, 127 La. 398, 53 South. 662. It had also been held that the term "blind tiger" had a known and definite signification, and that "blind tigers" may be abated as public nuisances, by parochial and municipal authorities in the exercise of the general or special powers conferred on them. Town of Ruston v. Fountain, 118 La. 53, 42 South. 644; City of Shreveport v. Maroun, 134 La. 490, 64 South. 388, and authorities there cited. It had further been held that the laws prohibiting and regulating the sale, barter, etc., of intoxicants had no application to the business of selling nonintoxicating beverages, such as "near-beer," "hiawatha," etc. State v. Maroun, 128 La. 829, 55 South. 472; City of Shreveport v. Smith, 130 La. 132, 57 South. 655. In the cases last above cited the argument was strongly pressed upon the court that the business of selling the beverages mentioned, and others of similar character, was being used as a screen, behind which intoxicants were sold, but the court could find no authority for declaring one lawful business more than another to be unlawful, because an unlawful business might be conducted by the same person and at the same place. Such, in general, was the state of the law and the jurisprudence upon the subject of the sale of intoxicants when the General Assembly passed the Act No. 146, of 1914, which is entitled and in part reads as follows:

"An act to define and prohibit the keeping of a 'blind tiger'; to provide for the search of the same and for the seizure and destruction of any spirituous, malt or intoxicating liquor found therein; to provide for the punishment of any violations of this act.

"Section 1. * * * That a 'blind tiger' is hereby defined to be any place in those subdivisions of the state where the sale of spirituous, malt or intoxicant liquors is prohibited, where such spirituous, malt or intoxicant liquors are kept for sale, barter, exchange or habitual giving away as a beverage in connection with any business conducted at such place.

"Sec. 2. * * * That the keeping of a 'blind tiger' is hereby prohibited, and whoever shall be guilty of violating this act shall be guilty of a misdemeanor.

"Sec. 3. Provides that any place suspected of being a 'blind tiger' shall be searched, by an officer designated in a search warrant, and that any prohibited liquor found by such officer shall be seized and brought into court; that any court, having the power of a committing magistrate, may issue the warrant, upon an affidavit to the effect that the affiant believes a designated place to be a 'blind tiger,' together with such other evidence as the court may require in order to make out a prima facie case; that the officer shall make his return within 24 hours and shall bring into court all of the prohibited liquors, and all the persons that he may find on the premises, and that the court shall proceed, 'without delay,' to examine the facts, as a committing magistrate.

"Sec. 4. * * * That whoever shall be found guilty of keeping a 'blind tiger,' in violation of this act, shall be fined not less than $200 nor more than $500 and be imprisoned for not less than 30 days nor more than 6 months and on default of the payment of the fine and costs he shall be imprisoned for not more than 6 months additional.

"Sec. 5. * * * That all laws and parts of laws in conflict herewith be and the same are hereby repealed."

It appears, therefore, that although there were already upon the books statutes (Act Nos. 107 of 1902 and 176 of 1908) penalizing the retailing, without a license, of intoxicating liquors, or the keeping of a barroom, cabaret, etc., in communities where licenses may be issued, and other statutes (R. S. 910 and 1215, and amendments to section 910) penalizing such sales, or the keeping of a grog or tippling shop, in communities where licenses therefor are not permitted, and still another statute defining the term "grog or tippling shop," as applied to such establish-

ments in the communities last above mentioned, and although the court had recognized the term "blind tiger" as having a well-known meaning, and as descriptive of, and applicable to, a public nuisance, the General Assembly nevertheless deemed it advisable to pass the act of 1914 specifically defining that term and denouncing and penalizing, as a misdemeanor, the keeping, in communities where the sale of intoxicants is prohibited (meaning where the licensing of such sales is not permitted), of the place described in the definition. Thus (again quoting from the act):

"Section 1. * * * That a 'blind tiger' is hereby defined to be any place in those subdivisions of the state where the sale of spirituous, malt or intoxicant liquors is prohibited, where such * * * liquors are kept for sale, barter, exchange or * * * giving away as a beverage in connection with any business conducted at such place.

"Sec. 2. * * * That the keeping of a 'blind tiger' is hereby prohibited, and whoever shall be guilty of violating this act shall be guilty of a misdemeanor."

Then follow provisions authorizing the issuance of search warrants, the seizure of goods, the arrest of persons, the mandatory requirement that the court shall proceed "without delay" to examine the facts as a committing magistrate, and the penalty, the minimum being a fine of $200. Construing the statute thus enacted with those which had already been enacted and construed, and considering that it applies exclusively to prohibition territory, and that the existing laws applicable in such territory already covered sales of liquor, whether made in one place or another, the keeping of grog or tippling shops, as such, and without reference to their connection with any other business conducted at the same place, and the keeping of "blind tigers" (interpreted by this court to mean places, whether in prohibition · or nonprohibition territory where intoxicating liquors are sold, on the sly, contrary to law), and further considering the unusual and drastic provisions for the enforcement of the statute in question, and the fact that the minimum penalty which may be imposed thereunder is double that which may be imposed under any other statute relating to the sale of intoxicating liquors, and our conclusion is that the purpose of the act was to define and denounce, as a distinct offense, the keeping of a "place" in prohibition territory "where spirituous, malt or intoxicant liquors are kept for sale, barter, exchange or habitual giving away," not as in a place devoted to such business as a grog or tippling shop, but "in connection with any [other] business conducted at such place"; and we therefore further conclude that the keeping of the "place" in a subdivision of the state where the sale of such liquor is prohibited (or not permitted), and the keeping of the liquors at such place, in connection with some other business, conducted at such place, are essential ingredients of the offense so denounced; and hence that they should have been set out in the bill of information.

"An indictment under a statute ought with certainty and precision to charge the defendant to have committed or omitted acts under the circumstances, and with the intent mentioned in the statute; and if any one of these ingredients be omitted the indictment is not good." State v. Stiles, 5 La. Ann. 326; State v. Hood, 6 La. Ann. 179; State v. Read, 6 La. Ann. 227.

"The general rule is (and this, whether the indictment be under the common law, or for an offense created by statute) that the special manner of the whole fact ought to be set forth, with such certainty and so specifically that it may judicially appear to the court that the indictors have gone on sufficient premises, to enable the court to know what judgment is to be pronounced on conviction; that the defendant may clearly understand the charge he is called upon to answer; and that posterity may know what law is to be derived from the record." State v. McClanahan, 9 La. Ann. 211.

See, also, State v. Durbin, 20 La. Ann. 408; State v. Breaux, 122 La. 521, 47 South. 876; State v. Noel, 125 La. 309, 51 South. 215.

"In an indictment upon a statute, it is necessary that the defendant should be brought within all the material words of the statute, and

nothing can be taken by intendment." Wharton's Crim. Law, 133; 1 Chit. Crim. Law, 283. "The offense should be charged either in the language of the statute or in language of equivalent import; and a verdict not responsive to the charge will not authorize a judgment." State v. Pratt, 10 La. Ann. 191; State v. Cason, 20 La. Ann. 49.

The foregoing is but little more than an elaboration of the views expressed in the case of State v. Frankie Mackie (20941) 67 South. 25,[1] recently decided, and the application for rehearing in which is this day refused.

It is therefore ordered that the conviction and sentence appealed from be set aside, the demurrer and the motions to quash sustained, and the defendant discharged.

LAND, J., dissents.