no question for further argument; it being very plain.

We will now decide this one point. The foreign corporation, having since some time ceased business in this state as a corporation, is not the security required by the statute authorizing corporations to become sureties on appeal bonds.

This statute (granting the authority) should be read with the article of the Civil Code regarding sureties, and, judged by that article, it is evident that this no longer existing company in this state as a corporation with power to sign bond is not the required surety. Rev. Civ. Code, art. 3042.

True, one of the employés of the company testified that there were remnants, unsettled business, of the company, in this state; also uncanceled premiums, the amount of which we are not informed. There is nothing certain and tangible about the company.

It is not a legal surety, by reason of the fact that it has not complied with the law's requirement.

It is as if a surety had become insolvent since he signed the bond, or as if for some other good reason he is no longer a good surety.

In that case the court can order that another surety be furnished.

The demand of plaintiff in motion is:

"The *writs of sequestration and injunction* to be set aside unless within a delay fixed by the court the plaintiff furnish new bonds." (Italics ours.)

For reasons stated, the judgment appealed from is avoided, annulled, and reversed, at appellee's costs in both courts.

It is further ordered, adjudged, and decreed that the Bankers' Surety Company is not the surety required by law, that another surety be furnished in lieu of this company within 20 days from the filing of this decree in the district court, and if at the end of that time surety be not furnished satisfactory to the judge of the district court it shall by the failure operate as a dismissal of the injunction and sequestration obtained by plaintiff and appellee.

---

(46 South. 676.)

No. 17,027.

HAGENS et al. v. POLICE JURY OF CADDO PARISH.

(May 25, 1908.)

1. INTOXICATING LIQUORS — LOCAL OPTION ELECTION—CONTEST.

There is no statute authorizing plaintiff to contest an election held to decide whether or not liquor license shall issue in a ward or parish.

2. ELECTIONS — COUNTING VOTES — JUDICIAL FUNCTION.

The counting of votes is a judicial function only in so far as made such by special statute.

3. INTOXICATING LIQUORS — LOCAL OPTION ELECTION—CONTEST.

The right assailed is a public right. It does not fall within the class of rights referred to in Const. art. 109, "civil or political rights," that are personal.

4. SAME—AN ELECTION MUST BE HELD—VALIDITY.

To the extent steps are taken to hold the election, the court will entertain jurisdiction; no further.

It is a question of authority to hold the election.

The ordinance under which the election was called was not illegal.

The time allowed between the date the election was ordered and the date of the election was not fatally insufficient.

The other questions relate to the conduct of the election. The counting of votes, and other similar details of election—as relate to the local option law— left under present law to the respective localities.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Andrew Jackson Murff, Judge.

Action by J. T. Hagens and others against the police jury of Caddo parish. Judgment for defendant, and plaintiffs appeal. Affirmed.

. Alexander & Wilkinson and Edgar Williamson Sutherlin, for appellants. James Martin Foster, Dist. Atty., and Wise, Randolph & Rendall, for appellee.

BREAUX, C. J. The plaintiffs are in the liquor business in the city of Shreveport, in the parish of Caddo.

They are qualified voters, and have large amounts invested in that business.

The object of the suit was to have decreed null a special election which was held on the 14th day of January, 1908, in that parish, and carried by a majority of 71 votes in favor of prohibition.

The election was held in accordance with an ordinance of the police jury on the 12th day of December, 1907, to determine whether or not the liquor business should be prohibited.

Plaintiffs complain of this ordinance, and urge that it is a null ordinance, and, besides, that the voters did not have an opportunity to register and take out registration papers, because the election was ordered by the police jury under the said ordinance within 32 days after the first notice of election under the ordinance, and in consequence the voters had had no notice of an intention to call a special election, and had not registered and could not register in time, and that because of this fact a number of voters were not permitted to vote.

The second ground of objection is that in six wards of the parish, some time prior to the parish election above mentioned, elections had been held and carried in favor of prohibition; that they were "dry" wards in consequence; that the police jury was without authority to have an election held in these wards until another election was held in the wards that had already gone "dry."

In other words, that the voters of these wards—that is, the dry wards—had been called upon to settle for themselves the liquor question, and that while the result of the election held in these wards was in force the voters within their limits could not be again called upon to vote upon the question when the election was called (in the whole parish) to determine whether or not there should be prohibition throughout the parish, without reference to any particular ward; that by thus holding the election throughout the parish prohibition was carried, while it would have been defeated if the "dry" wards had been left out.

Plaintiffs also urged that the parochial body calling the election was without authority or jurisdiction to adopt the ordinance in question.

Plaintiffs further urged that, while it is true that prohibition can be adopted, the intention of the lawmaker was that it should be adopted through the instrumentality of a regularly called and conducted election, which was not the case here, and for that reason nullity is pleaded of all of its proceedings and of the whole election.

Petitioners also complain of the action of the commissioners in illegally excluding from participation in the election 150 voters, nearly all of whom were opposed to prohibition.

This exclusion was on the ground that they had not registered in time to vote.

The contention of plaintiffs, further, is that in the country, where the prohibition element is in the majority, quite a number of voters were permitted to vote who had registered within 30 days before the election.

There are other complaints, such as that the secrecy of the ballot box was not observed; that the voters had to vote their ballots in open view of the bystanders; that in one of the boxes, identified by the name of "Vivian," 25 voters were permitted to vote who had not registered at all and had not paid their poll tax; that in the entire parish 80 persons were permitted to vote in favor of prohibition who had not paid

their poll tax; that all of the facts can be shown by an examination of the ballot cast.

The power to hold the election is assailed, and to that extent gives rise to questions of which the courts have jurisdiction, for an illegality committed in matter of an election that is violative of every principle of right (that goes to the power itself of the body calling the election) may be brought before the courts.

The contention of the plaintiffs goes further. It is that the district court had jurisdiction in all cases where public position or civil or political rights are involved, although the question relates exclusively to the conduct of the election itself.

The article of the Constitution (109) invoked by plaintiff has not been construed heretofore as relates to civil and public rights, as mandatory and self-operative, but as permissive. No statute was ever adopted to make that part of the article operative in so far as "local option" is concerned.

As far back as 13 La. Ann., in the Rousseau contested election case, the court declined to assume jurisdiction because there was no statute upon the subject.

While the Legislature had adopted statutes in regard to other elections, or elections relating to other proposed measures, that body has been silent in regard to such an election as the one which is attacked by plaintiffs in this case.

We take up for decision the question going to the power of the police jury to call the election at all as being fundamental.

If there is error at all in this respect, it was error to call the election for the purpose stated.

The ground here is that the whole election is null, because elections had already been held in several of the wards and the anti-whisky license cause defeated. In other words, the wards had been dry wards, and that none the less the police jury adopted an ordinance to hold the election throughout the parish.

It is charged that on the ground stated the ordinance was null and void.

We cannot see it in that light. Under the present statutes regarding local option the parishes have considerable authority.

The question has already received consideration, as will be seen by referring to the decisions which we will cite later.

After repeated suits and the last act upon the subject of local option, the authority to call elections has expanded from what it was originally. The parishes can hold elections at the time authorized in all of the wards, although a number of these wards have already acted upon the subject. Police Jury v. Mansura, 119 La. 300, 44 South. 23.

The police jury arrived at the conclusion in this case that an election should be held in the whole parish. The ordinance was legal.

The police jury binds the lesser wards of the parish. The result as to the ward is not to be lightly interfered with; but, if an election is timely held throughout the parish, then the result binds the whole parish.

The police jury cannot be compelled to submit to the wish of one or two wards, if it in the exercise of its legitimate discretion, concludes that an election shall be held in the whole parish.

We find no authority in law to throw out the whole result of five wards in the election on the grounds urged by plaintiffs.

The next ground, which goes to the origin of the power, is that the election was only ordered on the 12th day of December, 1907, to be held just 32 days from that date.

The complaint of plaintiffs is that the time was so unreasonably short that it deprived many voters, who were not then qualified by registration, from participating in the election.

It was a short time within which to regis-

ter, but that fact is not fatal to the election. The police jury is vested with some discretion. Without charge or proof of wrong or intended wrong, it affords no ground of complaint sufficient to justify us in setting aside the election.

There is no law which requires that any specified time will be granted before ordering the election in a prohibition contest. In the absence of a time limit by statute, there is no good ground to assume that by thus fixing the number of days the police jury adopted an entirely illegal ordinance. We would be substituting our own view as relates to delay to that of the local body responsible for their action to these by whom they have been elected.

The foregoing are the only questions we deem proper to review. The other question relates to the conduct of the election.

Controversies in communities about intoxicants and the elections in that connection held to ascertain the will of the citizens do not, without legislative delegation, come within the judicial functions of the courts. Communities at this time are expected to govern themselves upon the subject. They can, by thoughtfulness and some moderation. There will, doubtless, be errors committed. It looks as if the legislative branch of the government thinks that communities are equal to correcting these errors without having to resort to the courts. We will only add: If they overcome their difficulties by their own exertions, they will only be the better for it.

Years ago the courts declined to take jurisdiction. In the first case the court said:

"The Legislature was charged with the function of ordering these elections and regulating the mode in which the votes should be cast and returned and the result ascertained and proclaimed."

It did not authorize the court to act.

In Woodruff v. Police Jury, 41 La. Ann.

846, 6 South. 777, the court again declined to take jurisdiction.

Later similar views were expressed in State ex rel. Davis v. Police Jury, 43 La. Ann. 1009, 10 South. 359, from which we quote:

"The police jury being authorized to declare the result of the election, it is vested with the power to investigate and eliminate fraud; and this court, in the absence of legislative authority, has no power to review the findings of the police jury."

After these decisions had been rendered, the courts were authorized to try certain election cases.

Act No. 106, p. 140, of 1892, provided for contest of election under articles 209, 242, and 250 of the Constitution of 1879, all relating to the erecting and constructing of public buildings, bridges, and work of public improvements and railway enterprises, and regarding the parish lines. No reference was made to local option elections in subsequent enactment.

The court continued to hold, as was decided in State v. Police Jury, 43 An. 1009, 10 South. 359, and State ex rel. Rees v. Foster, 111 La. 1087, 36 South. 200.

From the last-cited decision the following is an excerpt:

"The courts of this state are without jurisdiction to entertain an election contesting the validity of a primary election in the absence of expressed statutory authorization."

The court will assume jurisdiction to put the election machinery in motion. It goes no further. After that it appears as if it is intended that the citizens should ascertain the result for themselves by proper means.

The conduct in local option elections by persons authorized to hold them is not subject to inquiry before the civil courts.

For reasons stated, the judgment is affirmed.