## MORRISETT et al. v. CITY OF SHREVEPORT (TARVER et al., Interveners).*
### No. 4916.

Court of Appeal of Louisiana. Second Circuit.

June 27, 1934.

Harry V. Booth and H. B. Lingle, both of Shreveport, for appellants.

Robert G. Chandler, Cook & Cook, and C. D. Egan, all of Shreveport, for appellee.

*Rehearing denied July 16, 1934.

DREW, Judge.

On November 23, 1933, a petition, purported to be signed by 33 per cent. of the qualified electors of the city of Shreveport, was presented to the city council requesting that a referendum be called for the purpose of propounding to the electors of this city three questions, namely:

1. Shall the form of government of the city of Shreveport, La., be changed?

2. Shall the city of Shreveport, La., abandon its organization under Act No. 302 of 1910, as amended, and resume its original charter, as amended?

3. Shall the proposition to organize the city of Shreveport, La., under the commissioner manager plan, according to Act No. 100 of 1918, of the General Assembly, be adopted?

A certified copy of this petition is annexed to plaintiffs' petition and is as follows:

"To the Honorable Mayor and Commission Council of the City of Shreveport, Louisiana:

"We, the undersigned qualified electors residing in the territorial limits of the City of Shreveport, Caddo Parish, Louisiana, constituting 33% and more of such qualified electors of the said City, respectfully petition that you call a special election for the purpose of taking the sense of the voters and submitting to them the following proposition:

"1. Shall the form of government of the City of Shreveport, Louisiana, be changed?

"2. Shall the City of Shreveport, Louisiana, abandon its organization under Act No. 302 of 1910, as amended, and resume its original charter, as amended?

"3. Shall the proposition to organize the City of Shreveport, Louisiana, under the Commission Manager Plan, according to Act No. 100 of 1918, of the General Assembly, be adopted?

"We further request that should a majority of voters, voting at such election, vote for a change of form of government as set forth in Proposition No. 1, that you shall canvass the vote on Propositions Nos. 2 and 3 to determine what form shall be adopted, but should a majority of voters at said election vote 'No' on Proposition No. 1, submitted above, then that no canvass be made on Propositions Nos. 2 and 3, and that you, by appropriate language on the ballot, convey notice of this to the voters.

"This is one of a series of similar petitions, identical in form and language, and we concur in all of said petitions, the whole being considered as one.

"Respectfully,

"Name:        Street & No.        Precinct No."

Said petition further provided that should a majority of the electors participating in said referendum to be called by the council vote in favor of a change of government, as set forth in Proposition No. 1, that the vote should then be canvassed on Propositions Nos. 2 and 3, and that should a majority of the votes be against a change on Proposition No. 1, no canvass should be made on Propositions No. 2 and No. 3; to the contrary, if a majority should favor a change on Proposition No. 1, then the vote on Propositions No. 2 and No. 3 should be made and promulgated.

It is then alleged by plaintiffs that pursuant to said referendum petition the city council, pretending to act by authority of Act No. 156 of the General Assembly for the year 1932, amending and re-enacting section 7 of Act No. 302 of 1910, did, on November 23, 1933, duly adopt Resolution No. 72 of that year, calling an election to submit to the qualified registered electors of Shreveport the propositions enumerated in said petition.

That the election was called for and held on Thursday, December 28, 1933, with the official ballot presenting the identical propositions set forth in the referendum petition, in accordance with a true copy of the ballot, annexed to plaintiff's petition.

The result of the election, according to the official promulgation thereof by the city council, resolving itself into the election committee, was as follows:

"Proposition No. 1

"1. Shall the form of government of the City of Shreveport, Louisiana, be changed?
   "(To vote for a change, etc.) *For* 2614
   "(To vote to retain, etc.) *Against* 1890

"Proposition No. 2

"2. Shall the City of Shreveport, Louisiana, abandon its organization under Act No. 302 of 1910, as amended, and resume its original charter, as amended?
   "*For* 2440

"Proposition No. 3

"3. Shall the proposition to organize the City of Shreveport, Louisiana, under the Commissioner Manager Plan, according to Act No. 100 of 1918, of the General Assembly, be adopted?
   "*For* 1576."

The procès verbal of said election, as promulgated by the council in Resolution No.

80 of the year 1933, which resolution declared that a majority of the electors, exercising their franchise in said election, had favored a change in the form of government, and the adoption of Proposition No. 2, namely, the reorganization of the city under its original charter, as amended, all in accordance with the above vote on Propositions Nos. 1, 2 and 3.

Paragraph 10 of plaintiffs' petition alleges said election, and all and every proceeding in connection therewith, to be null, void, and of no effect whatsoever, because:

1. That Act No. 156 of 1932, amending and reenacting section 7 of Act No. 302 of 1910, does not authorize an election to be called for the purpose of submitting to the electors of the city of Shreveport the abstract proposition as to whether or not they desire a change in the form of the city government, as provided for in proposition No. 1 of the official ballot submitted to the electors.

2. That a majority of the votes cast were not in favor of proposition No. 2, or the adoption of the original charter, as amended.

3. That the propositions as submitted were calculated to mislead and deceive the voters, and in fact did so mislead and deceive those who participated in said election, since there was no unmistakable and concise manner provided for the voters to choose between the three forms of government—the commission plan, the aldermanic form, and the commissioner manager plan.

4. That the commissioner manager plan (Proposition No. 3) was submitted under Act No. 100 of 1918, whereas it should have been submitted under Act No. 160 of 1918.

The petition then alleges that 4,504 electors cast their vote on Proposition No. 1, whereas only 4,016 voted on Propositions No. 2 and No. 3. From the result of the election, as disclosed by the official promulgation thereof, that 1,890, or in any event 1,402, of the voters who preferred the commission form of government were necessarily compelled, by the very nature of the ballot, to express their choice on two forms of government, viz., aldermanic or commissioner manager plan, both of which were adverse to their desire. It is then alleged:

(a) That Propositions No. 2 and No. 3 being so related to Proposition No. 1, that their submission in the manner and form provided for in the ballot placed 1,890 voters in a position of having voted for and against the same proposition, that is for a change and against a change.

(b) That 1,890 voters were then deprived of their ballot.

(c) That since 1,890 electors favored the commission form of government, as evidenced by their vote against the change (Proposition No. 1), and 1,576 favored the commissioner manager plan (Proposition No. 3), the aldermanic form (Proposition No. 2), did not receive the majority of the votes cast.

The plaintiffs filed two supplemental and amended petitions in which, in the alternative, the constitutionality of Act No. 156 of 1932 was attacked on the ground:

A. That the act is broader than its title, in that it authorizes the submission at the same election of another form of government, at the same time, the proposition as submitted, "Shall the City of (name of city) abandon its organization under Act No. 302 of 1910, as amended, and resume its original charter, as amended?" Also that Act No. 302 of 1910 and Act No. 156 of 1932, amending and re-enacting section 7 of Act No. 302 of 1910, are unconstitutional, null, and void, in that the body of each of said acts is broader than the title thereof, for the reason that there is nothing in the title of same to indicate or suggest or authorize a change in the form of government to the aldermanic or to any other form.

B. That the provisions of Act No. 156 of 1932 are impossible of execution, since by providing for the submission at the same time of any other form of government, at the time the aldermanic form is submitted, makes it impossible for any form so submitted to receive a majority of the votes cast.

C. That the act is so ambiguous and confusing as not to be susceptible of execution or judicial interpretation.

Petitioners then averred that the city council had publicly acquiesced in the so-called election of December 28, 1933, and had declared its intention of doing acts which would have for their purpose and effect the abandonment of the commission form of government, under Act No. 302 of 1910, and in particular had declared that it would call an election for the purpose of electing a mayor and trustees under the original charter of Shreveport, as amended, unless restrained by the court from so doing.

The prayer asked that Resolutions No. 72 and 80 of 1933, adopted by the city council, be decreed null and void; that the election be set aside, as being unauthorized, the same as if no election had been held; and all other proceedings be declared null and void as may have been had or done with reference to upholding the validity of said election and the abandonment of the commission form of

government, as constituted under Act No. 302 of 1910; and for judgment against the city of Shreveport and council, granting a permanent injunction against the city, forever preventing, prohibiting, and enjoining the doing of any act having for its purpose or effect the abandonment of the present or commission form of government under Act No. 302 of 1910, and in particular the calling of an election having for its purpose the election of a mayor and trustees, as provided for under the original charter of Shreveport, as amended.

The answer of the city admits all of plaintiffs' allegations of fact, denying only those allegations which are more or less conclusions or arguments from such facts as alleged.

An agreed statement of facts has been filed in the record wherein it is set forth that Rex Morrisett and E. A. Johnson are duly registered and qualified electors, citizens and taxpayers of the city of Shreveport; that they voted in the election of December 28, 1933, and voted against Proposition No. 1; that no direct pecuniary loss or damage will result to them, whatever may be the form of government; that the election of December 28, 1933, was held under the provisions of Act No. 156 of the Legislature for the year 1932, and was called by virtue of a petition of qualified electors of the city of Shreveport, a certified copy of same being Exhibit A attached to plaintiffs' petition, and that the original petition bears the certificate of the registrar of voters for Caddo parish, La., to the effect that more than 33 per cent. of said qualified electors of the city appear thereon; that Resolutions No. 72 of 1933 and No. 80 of 1933 were adopted under the provisions of Act No. 156 of 1932; that the ballot, identified as "Exhibit B," annexed to plaintiffs' petition, is a true copy of the official ballot used in the election of December 28, 1933; and that the ballots so used in said election were numbered; that the city council of the city of Shreveport recognizes the election of December 28, 1933, as a valid election; and that, in event said council is not restrained by decree of a competent court, that it (the said council) will proceed to put the new or aldermanic form of government into effect at the time prescribed by law.

The ballot reads as follows:

"Official Ballot
"Special Election,
"Thursday, December 28, 1933.
"Shreveport, La.

"At Special Election called by the City Council of the City of Shreveport to be held on the 28th day of December, 1933, for the purpose of voting upon propositions relating to the change in the form of government of the City of Shreveport.

"(Each voter *MUST* vote on Proposition No. One (1). Failure to vote on this proposition will result in a spoiled ballot.)

"Proposition No. 1

"First: Shall the Form of Government of the City of Shreveport, Louisiana, be changed?

"(To vote for a change in the form of government, place an 'X' in the square opposite the word 'For.') For......☐

"(To vote to retain the Commission form of government, place an 'X' in the square opposite the word 'Against.') Against......☐

"(The elector must indicate his choice by voting for Proposition No. 2, or Proposition No. 3, regardless of how he votes on Proposition No. 1. This is necessary in order to determine what form of government the City shall operate under, in the event a majority of those voting cast their ballot in favor of Proposition No. 1,—that is, in favor of a change in the form of government.)

"Proposition No. 2

"Second: Shall the City of Shreveport, Louisiana, abandon its organization under Act No. 302 of 1910, as amended, and resume its original charter, as amended?

"(To vote for Aldermanic form of government, place an 'X' in the square opposite the word 'For.') For......☐

"Proposition No. 3

"Third: Shall the proposition to organize the City of Shreveport, Louisiana, under the Commissioner Manager Plan, according to Act 100 of 1918, of the General Assembly, be adopted?

"(To vote in favor of the Commissioner Manager Plan, place an 'X' in the square opposite the word 'For.') For......☐

"(The votes on Proposition No. 2 and Proposition No. 3 will not be canvassed or acted upon unless a majority of those voting cast their votes in favor of Proposition No. 1.)"

The testimony of W. E. Payne, G. H. McGowan, Sam Bordelon, Mildred Johnson, and E. A. Johnson was taken out of court, by agreement of counsel, and the transcript of the testimony will be found in the record.

The defendant, city of Shreveport, filed three preliminary pleas, filed and submitted to the court a quo at the same time the case was submitted on the merits, viz.: (a) Excep-

482

tion and plea to the jurisdiction ratione materiæ; (b) exception of no cause or right of action; (c) plea of estoppel.

A. H. Tarver and B. H. Bolinger appeared both as interveners and as amicus curiæ, by consent of the court and litigants, adopting the pleadings and defense of the city and praying for the same relief.

The lower court overruled the exception to the jurisdiction, exception of no right of action, and sustained the exception of no cause of action. It did not pass on the plea of estoppel nor on the merits of the case. Plaintiffs appealed to this court, and defendant has answered the appeal praying that the judgment of the lower court be affirmed and, in the alternative, that the exceptions to the jurisdiction and of no right of action and estoppel be sustained.

■ The plea to the jurisdiction is based on the contention that courts are without jurisdiction ratione materiæ to inquire into causes involving contested elections in the absence of statutory authorization. Defendant cites in support of this contention a long list of authorities, beginning with State v. Judge, 13 La. Ann. 89. We have carefully read the cited cases and find they have no application to the case at bar. This case is clearly one in which plaintiffs are attacking the right of the city to call the election. The power to hold the election is assailed, and therefore gives rise to questions of which the courts have jurisdiction. Hagens v. Police Jury, 121 La. 634, 46 So. 676.

■ The exception of no right of action is based upon the contention that the plaintiffs did not show any pecuniary interest which can be considered or adjudicated upon by a court of justice. Plaintiffs allege, and it is admitted, that they are citizens, taxpayers, and voters of the city of Shreveport. They have no pecuniary interest in the matter. To say that plaintiffs have no right to contest what they allege to be an unauthorized act of the city council, in a matter which entirely changes the form of government they will be forced to live under, would be equivalent to saying that the city council is free to set up any form of government they might wish and their action would be final. If a citizen, taxpayer, and voter of the city cannot act in such a case, we can conceive of no one who would have the right. They have a vital interest which in many respects is greater than a pecuniary interest, a right to prevent an alleged violation of their fundamental rights as citizens and voters, and in seeking the or-

derly administration of their city government. They have a real and actual interest in the form of government under which they must live, and to hold otherwise would be destructive of the tradition and history of our nation and the basic fundamentals of democratic government. Plaintiffs have a right in law to implead the city government in this case. Johnson v. City of New Orleans, 105 La. 149, 29 So. 355.

There is ample authority for holding that a substantial and actual particular interest must be shown as the basis for an action to contest an election held for some special purpose incidental to an already existing valid form of government. But we are of the opinion that these authorities are not applicable where, as in the present case, the election involves a change in the existing, and the adoption of an entirely new, form of government. In such a case unquestionably, a citizen, elector and taxpayer, in addition to the general interest common to all, has a vital particular concern in the kind of government under which he is to live.

■ Having found that the court has jurisdiction ratione materiæ and that plaintiffs have a right to bring the suit, the only remaining question before us is: Does the petition and record in the case disclose a cause of action?

Plaintiffs allege that the acts of the Legislature under which the city proceeded are unconstitutional; if not unconstitutional, that the action of the city council was contrary to and unauthorized by their provisions; that the ballot used on the day of election was illegal in form and that less than 50 per cent. of those voting voted for the aldermanic system of government; that due to the action of the council in having the ballots prepared as they were, the voters were not able to vote intelligently; that Proposition No. 3 on the ballot proposed a form of government not authorized by the act of the Legislature relied upon therein.

It is admitted in the briefs that the lower court sustained the exception of no cause of action on the sole ground that plaintiffs failed to show a sufficient interest to sustain the action.

For the reasons expressed in our ruling on the exception of no right of action, which covers this point, we conclude that the judgment sustaining the exception of no cause of action is erroneous. The lower court not having passed on the merits of the case, we know of no law which authorized this court to do so.

For the reasons above assigned we find the judgment of the lower court, overruling the exception to the jurisdiction and the exception of no right of action, to be correct, and the judgment sustaining the exception of no cause of action to be erroneous. It therefore follows that the judgment of the lower court is reversed and the case is remanded for further procedure in accordance with the views expressed herein; cost of appeal to be paid by the appellee; and cost of the lower court to abide the final disposition of the case.