LANDRY, Judge.
This is an action by a group of qualified electors challenging the constitutionality of LSA-R.S. 18:621 which statute gives to the State Central Committees of the respective political parties of the state authority to provide the method for nomination of party candidates for the offices of presidential electors. In the alternative, petitioners question the validity of the action of the Democratic State Central Committee (hereinafter referred to as the “Committee”) in naming two slates of candidates for the offices of presidential electors to appear on the ballot in the November 3, 1964 general election to be held ,in this state.
Plaintiffs’ original petition sought to enjoin the Secretary of State from taking any *218 steps in the preparation of necessary election materials insofar as the election of presidential electors is concerned and also prayed that the Committee be enjoined from nominating or certifying the names of any candidates as nominees of the Democratic Party for the offices of Presidential Electors in the aforesaid general election. In addition plaintiffs sought injunctive relief prohibiting the Committee selecting Democratic presidential elector nominees in any manner until the legislature of this state shall have expressly prescribed such manner of nomination or selection.
After disposing of certain exceptions the trial court, pursuant to statutory mandate ordered the Honorable Jack P. F. Gremil-lion, Attorney General, cited to defend the constitutionality of the statute herein assailed.
The district court rendered judgment maintaining the constitutionality of the challenged statute and enjoining the Democratic State Central Committee from nominating or undertaking to nominate or to certify more than ten (10) nominees as candidates for the office of presidential electors. The plaintiffs have appealed from that portion 'of the judgment pronouncing the statute constitutional. They reiterate their prayer for injunctive relief to prevent the certification of any candidates until the Legislature shall have provided the method for their selection.
An exception of prematurity was filed on behalf of the defendant Secretary of State on the ground that no names of Democratic nominees had been certified to that officer by the Committee therefore he was under no legal obligation and could not prepare materials for the general election of presidential electors until the nominees were certified to him by the Committee. This exception was sustained and the action dismissed as to the Secretary of State. A similar exception filed on behalf of the Committee was overruled by the trial court. No appeal has been taken from either of said rulings.
An exception of nonjoinder of indispensable parties was overruled and has subsequently been abandoned.
Exceptions .of lack of jurisdiction over the subject matter, of no right and no cause of action were overruled and are re-urged before us by way of answer to appeal.
It is conceded the Committee has not as yet certified the names of any nominees to the Secretary of State as candidates of the Democratic Party for the offices of Presidential Electors in the pending general election scheduled to be held November 3, 1964. Predicated upon this circumstance and the added contention that only political issues are presented for determination the Committee maintains the courts are without jurisdiction to hear this matter because of well established jurisprudence holding that the courts are without 'authority to hear purely political matters in the absence of express legislative or constitutional authority and appellants have cited no such authority in the case at bar. It is further conceded, however, the Committee has adopted a resolution providing for nomination of a dual slate of party candidates or nominees for the office of Presidential Elector to be held in the previously mentioned general election. The numerous authorities cited by appellees in support of the exceptions of lack of jurisdiction over the subject matter are without application in the case at bar.
While it is true, as maintained by appellees that the courts generally have no jurisdiction over disputes involving purely political issues there is an exception to the rule in those instances wherein the validity of a state law or statute is in question. In this regard we quote with approbation the following language appearing in the judgment of the trial court:
“It is the law and has been so held in the State ex rel LeBlanc versus Democratic State Central Committee, 229 La. 556, 86 So.2d 192, 195, that in the absence of constitutional or statutory pro *219 hibition all elections and nominations as well as other matters relating to or affecting same are governed by political parties and are, therefore, beyond judicial control. This doctrine was first announced in Reid versus Brunot, 153 La. 490, 96 So. 43, and there the Court made a distinction between political Tights and civil rights, stating that political rights were not a natural right, hut exist, if at all, in the Constitution ■or statutes. However, it is also the law that this rule has no application where the constitutionality of a statute is at issue and that principle dates hack to the case of McPherson versus Blacker, 146 U.S. 1, 13 Supreme Court 3, [36 L.Ed. 869] 1892.”
It follows that the exception of lack of jurisdiction over the subject matter was properly overruled by our esteemed colleague below.
The exceptions of no cause and no right of action were based upon the contention that a statute may be assailed only by one relying on an alleged invasion of his own individual constitutional rights and in such connection it must be shown that the complainant has a proper, real and actual interest to assert. In this regard appellees point out that plaintiffs do not complain of a denial or impairment of their right to vote, or their right to cast their ballots for the presidential electors of their choice, or their rights to have their votes counted. Appellees further point out that no plaintiff asserts a desire or intention to become a candidate for presidential elector in the forthcoming general election and neither ■does any plaintiff claim to have contributed, directly or indirectly, any sum or funds to the Committee.
 While it is quite true that only candidates who claim to have been elected may properly contest an election as provided for by LSA-R.S. 18:1251, the matter at bar is not an election contest inasmuch as it does not involve a dispute between rival candidates or contestants. State Ex Rel. Glorioso v. Board of Supervisors of Elections, La.App., 198 So. 773. Moreover, it must be conceded that members of one political party may not complain of the manner in which nominees of an opposing faction were selected. Caswell v. Hoft, La.App., 119 So.2d 864.
The general rule that a substantial and actual particular interest must exist as the basis for an action to contest a special election, is not without its exception. In Morrisett v. City of Shreveport, La.App., 155 So. 478, 479, a group of citizen-taxpayer-voters were held entitled to bring an action questioning the authority of a city council to hold an election. We note with approval the following language appearing in the Morrisett case, supra:
“ * * * To say that plaintiffs have no right to contest what they allege to be an unauthorized act of the city council, in a matter which entirely changes the form of government they will be forced to live under, would be equivalent to saying that the city council is free to set up any form of government they might wish and their action would be final. If a citizen, taxpayer, and voter of the city cannot act in such a case, we can conceive of no one who would have the right. * * * ” (Emphasis supplied.)
The observations hereinabove noted are peculiarly appropos the case at hand. If citizens who are both taxpayers and qualified voters may not institute action to determine the validity of the statute in question, it is indeed clear that no one would possess such right or authority. To hold otherwise is to render impossible any contest of the validity of the statute as well as any action to determine whether the Committee, acting under its authority, has complied with its terms and provisions. Such a result would leave it within the power of the legislature to enact election laws contrary to constitutional authority and the *220 central committees of the respective parties free to nominate candidates without regard to applicable statutes. Having alleged they are taxpayers and qualified voters, plaintiffs do indeed possess the right to institute an action designed to prevent the alleged unconstitutional expenditure of public funds in the holding of an election in contravention of the general election laws of this state.
LSA-R.S. 18:621 which appellants seek to annul in its entirety, reads as follows:
“§ 621. Method of making nominations
“All nominations by political parties recognized by law shall be as provided in the primary election laws. This does not apply, however, to presidential electors, who shall be chosen and nominated in any manner determined by a resolution of the state central committee of the respective political party.”
Plaintiffs maintain the statute in question is violative of Article 2, Section 1 of the United States Constitution, and Article VIII, Sections 4 and 9 of the Louisiana Constitution, LSA., the pertinent portions of which said constitutional articles are as follows:
U. S. Constitution, Article 2, Section 1:
“ * * * Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress * *. * * *»
Constitution of 1921, Article VIII, Section 4:
“Section 4. The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates. * * *»
Constitution of 1921, Article VIII, Section 9:
“ * * * Presidential electors and members of Congress shall be chosen or elected in the manner and at the time prescribed by law.”
In essence appellants maintain LSA-R.S. 18:621 is invalid because the legislature in providing that party nominees for the office of presidential elector shall be “chosen and nominated in any manner determined by a resolution of the state central committee”' has unlawfully delegated its constitutional authority to provide the method of appointing or electing presidential electors. Appellants concede the legislature may authorize selection of party nominees for presidential' electors by committee nomination but that to do so the legislature must expressly prescribe the method of selection and may not leave the procedure therefor entirely to the discretion of party committees. In this regard it is argued that in leaving the manner of selecting party nominees entirely to the discretion of the respective party central committees, the legislature has failed' to> comply with the mandate of providing the manner and time for choosing presidential' electors as required by Louisiana Constitution Article VIII, Section 9. Consequently,, defendants maintain the legislature has provided no valid, effective method of appointing presidential electors and must therefore meet and enact legislation in conformity with the applicable constitutional provision. Predicated on the foregoing assumptions,, appellants maintain LSA-R.S. 18:621 is totally invalid and therefore no central committee of any recognized political party may appoint any nominee for the office of presidential elector. On these premises appellants argue the trial court erred in holding that defendant committee could nominate a single slate of 10 nominees.
On the other hand, the Committee maintains LSA-R.S. 18:621 is not an unlawful delegation of legislative power but rather a delegation of political power and authority. In addition the Committee argues it *221 has authority to nominate dual slates of candidates for the offices of presidential electors because LSA-R.S. 18:629 which provides that no greater number of nominees may appear under a party designation or symbol than there are “offices” to be filled in a general election is without application in a general election for presidential electors because the position of presidential elector is not an “office”. In oral argument before this court it was also contended LSA-R.S. 18:629 is subject to the exception expressly provided in LSA-R.S. 18:-624, subd. D to the effect that in general elections, under certain conditions set forth, the name of a nominee for the position of presidential elector may appear in more than one place on the ballot.
Considering first appellants’ contention that LSA-R.S. 18:621 is invalid as an unlawful delegation of legislative authority, it must be borne in mind that said statute appears in that part of LSA-R.S. Title 18, General Election Law, designated as “Sub-Part B. Nomination of Candidates” and deals with nomination of candidates rather than election.
Alluding next to the applicable provision of the Federal Constitution, we note that it requires each state to “appoint” electors “in such Manner as the Legislature * * * may direct.” We further observe that the Legislature of Louisiana has complied with the aforesaid directive by providing in Article VIII, Section 9 that Presidential Electors shall be appointed by election “in the manner and at the time prescribed by law.” The words “prescribed by law” as contained in our own state constitution can only mean “as prescribed by the legislature” inasmuch as there appears to be no such prescription of time and method contained in the state constitution itself. It is equally clear the pertinent provision of the Federal Constitution imposes no restriction upon the respective state legislatures as to the method of nomination of candidates for the office of presidential elector.
In implementation of Article VIII, Section 9 of the Louisiana Constitution and the pertinent provision of the Federal Constitution the legislature has enacted LSA-R.S. 18 ¡1381-1385 which in effect provides that each qualified voter in the state shall vote for presidential electors and in addition provides the qualifications of candidates for the office of presidential electors, compensation to be paid such officials and the method of filling vacancies in such positions. It is to be further noted the time for holding presidential elector elections is prescribed in LSA-R.S. 18:547. Thus it appears there has been no delegation of legislative authority with respect to the manner and time in which presidential electors shall be elected. Moreover, it would appear that the proper application of Article VIII, Section 9 of the State Constitution to the election of presidential electors is precisely that which has been accorded it to the present time, namely, its requirement that presidential electors be chosen according to the general election laws of the state. We believe, therefore, the requirement of Article VIII, Section 9 of the state constitution that presidential electors shall be chosen or elected in the manner prescribed by law is satisfied by LSA-R.S. 18:1381-1385, inclusive, and other pertinent statutes.
Appellants’ contention that LSA-R.S. 18:621 is violative of Louisiana Constitution Article VIII, Section 4 which requires the legislature to enact laws to secure fairness in the manner of making nominations, is found to be without merit. We believe this constitutional mandate has been obeyed in that the legislature has prescribed detailed rules for the government of political parties specifically including the method of election of members to the respective state central committees. Citation of all applicable statutes would serve no useful purpose herein. We believe it suffices to say that the legislature has so provided in considerable detail. It is significant that Article VIII, Section 4 of our State Constitution provides that nomination *222 of party candidates may be by “party primary elections, conventions, or other methods of naming party candidates.” Thus our basic law clearly authorizes the naming of party candidates for political office by means other than party primaries or conventions. It follows therefore that nomination by a party’s central committee (as provided for by our state legislature) is not an unfair method of selecting a party candidate. Candidates appointed by a central committee elected by party primaries in which all members of the party are entitled to vote cannot be said to have been per se unfairly appointed. Indeed, in the case at bar it is not even suggested the appointments of the committee were unfairly made in any respect whatsoever. Regarding nomination by appointment we note the recent Supreme Court decision of Collier v. Democratic Executive Committee, 245 La. 773, 161 So.2d 76, wherein it was held that where a primary election to nominate a party candidate is prohibited by law, the appropriate party committee is obliged to make a selection in any manner except by primary election. In the event of vacancy occurring after a party primary the laws provide for filling such vacancy by committee appointment. Thus, we believe, the pertinent statutory authority, considered in pari materiae (as they must be) establish the validity of LSA-R.S. 18:621.
Appellants acquiesce in the ruling of the trial court that the nomination of two slates of electors was in violation of LSA-R.S. 18:629 (a section of the General Election Law). Defendants, however, in answering the appeal urge our reversal of the trial court’s judgment in this regard.
On this issue the pertinent facts are stated in plaintiffs’ petition as follows:
“That at a meeting of the Democratic State Central Committee, duly called and held in the City of Baton Rouge on September 25, 1963, the said Committee adopted a resolution providing for a primary election to nominate a slate of ten candidates for the offices of presidential electors, said slate or list to have been nominated in accordance with the provisions of the primary election laws of this state, thus affording the voters affiliated with the Democratic Party of Louisiana an opportunity to have a voice in the selection of the said nominees as the candidates of said Party for said offices in the general election to be held throughout the State of Louisiana on November 3, 1964; that on May 22, 1964 the said State Central Committee adopted a further resolution providing for the certification by said Committee to the Secretary of State of two slates of candidates for the offices of presidential electors to be printed on the general election ballot on November 3, 1964, one of said slates to be subject to a pledge to support the candidates for President and Vice-President nominated by the National Convention of the National Democratic Party in the electoral college, and the other of said slates to be unpledged and free to vote for the candidates of their choice in the electoral college; that under the latter resolution of said Committee, each of said slates would be composed of ten candidates for the offices aforementioned in said general election, so that the State Central Committee of the Democratic Party of Louisiana would certify to the Secretary of State a total of twenty candidates for said offices as nominees of said Party. * * * ”
The controversy thus posed must be disposed of in the light of the terms of the statute involved which reads as follows:
“§ 629. Number of candidates on official ballot
“No greater number of candidates for any office shall appear on the official ballot bearing any one party designation than there are persons to be elected to the office, and the name of no candidate shall appear on the official ballot in more than one place, except in the man *223 ner and under the circumstances provided in R.S. 18:624.”
Defendants contend the cited statute is inapplicable because the Supreme Court of the United States has held that presidential electors are not officers and in support of said position rely upon the ruling in Ray v. Blair, 343 U.S. 214, 72 S.Ct. 654, 96 L.Ed. 894. In so urging, learned counsel for defendant has mistaken the purport of the authority in question. Our reading of the Ray case, supra, reveals that it held presidential electors are not federal officers, but rather that they exercise a federal function under authority from the state derived in turn from the authority contained in Article 2, Section 1 of the United States Constitution.
Whether a presidential elector holds an “office” within the meaning of the Louisiana General Election Law, more precisely, LSA-R.S. 18:629 is an entirely different question. We note with particular attention LSA-R.S. 18:622 which states:
“Whenever the state central committee of any political party recognized by law orders presidential electors to be nominated by a convention, the chairman and secretary of the convention shall draft a certificate which shall recite * * * the names of the persons nominated by the convention as party candidates for the office of presidential electors. * * * The certificate * * entitles the candidates to have their names printed on the official ballots * * * as the candidates for the office of presidential electors
Granted the above quoted section applies to nomination by convention, as differentiated from appointment by party committee, it nevertheless clearly signifies legislative intent that presidential electors be deemed “officers” within the meaning of the General Election Law of this state. We conclude, therefore, that a Presidential Elector elected in pursuance of our General Election Law holds an “office” within the intendment of the term as used in LSA-R.S. 18:629 and that nominations for candidates for such “office” must be in compliance with said statute. It follows that the nominations made or proposed to be made by defendant Committee must conform to the provisions of LSA-R.S. 18:629.
Apparent on the face of LSA-R.S. 18:629 is the prohibition against the nomination of a greater number of candidates bearing any one party designation than there are persons to be elected to the office in question. The clear and unmistakable intent of this statute is that the candidates chosen by the party shall be the party nominees, selected, (in the case of candidates for presidential elector), in accordance with the provisions of LSA-R.S. 18:621 and 622. It appears equally clear LSA-R.S. 18:629 contemplates all candidates nominated in conformity with its provisions shall have full, unqualified endorsement of the party making the nomination. It further appears that candidates nominated with other than full, unqualified party endorsement must be nominated by other means such as by nomination papers as provided for by statute. See LSA-R.S. 18:623.
We conclude, therefore, the trial court properly held that the Committee could not lawfully nominate more than 10 candidates for the office of Presidential Elector in the forthcoming general election to be held November 3, 1964, since only 10 electors were to be chosen at said election.
The views herein set forth regarding party endorsement of candidates, party designation and party nominees are not to be interpreted as having any bearing upon the authority of a party to exact a pledge from its nominees to support the party’s candidates for the office of President of the United States. The question of whether defendant Committee may nominate pledged or unpledged electors is not at issue herein and we express no views whatsoever on that subject.
*224 in oral argument before this Court, counsel for defendants has suggested that the prohibition of LSA-R.S. 18:629 against nominating under a single party designation more candidates than there are persons to be elected is expressly subject to the exceptions provided in LSA-R.S. 18:624. It is readily apparent that LSA-R.S. 18:629 deab with two situations. First, it prohibits the nomination of more than one person as party nominee for a single office. Secondly, it bans the placing of one person’s name on the ballot more than once except as is otherwise provided in LSA-R.S. 18:624.
Our consideration of LSA-R.S. 18:624 reveals that it permits the names of nominees for Presidential Electors to appear in more than one column on the ballot, under certain conditions therein set forth. The case at bar, however, does not concern the placing or appearance of the name of a nominee twice on the same ballot. We are herein presented with the first situation encompassed in LSA-R.S. 18:629, namely, the appearance of more than one person’s name under the party designation for each office to be filled. Plaintiff’s petition alleges and the committee resolution of record herein shows that defendant Committee proposes to certify twenty different names for ten offices to be filled in the election in question. The exception provided by LSA-R.S. 18:624 is clearly without application to the instant case as we are not herein concerned with the placing of the names of ten nominees twice on the ballot.
Finally, defendants argue the judgment of the trial court should be reversed because it granted relief not prayed for by plaintiffs. In this connection defendants point out that notwithstanding plaintiffs’ prayer that the committee be enjoined from nominating or certifying or undertaking to nominate or certify any candidates whatsoever for presidential electors until the legislature shall have enacted laws in conformity with the Constitution, the district court nevertheless refused the full relief prayed for and issued instead an injunction in the following terms:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiffs and against the defendant, the State Central Committee of the Democratic Party of Louisiana, granting a permanent injunction restraining, prohibiting and enjoining the State Central Committee of the Democratic Party of Louisiana from nominating or undertaking to nominate or to certify to the Secretary of State of the State of Louisiana for the general election ballot on November 3,1964 more than ten (10) nominees for the office of Presidential and Vice Presidential Electors. * * * ”
The district court was authorized to grant the judgment decreed, not because of the plaintiffs’ prayer for general relief, but upon authority of LSA-C.C.P. Art. 862, which provides as follows:
“Art. 862. Relief granted under plead-dings; sufficiency of prayer
“Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.”
We find the judgment of the trial court proper in every respect. Accordingly, the judgment appealed from is affirmed. Costs of this appeal shall be paid by appellants; all other costs shall be paid by defendant Committee.
Affirmed.