BOLIN, Judge.
Roy E. Thigpen, Jr. filed an application with the police jury of DeSoto Parish for a permit or license to sell beer in Ward Five of DeSoto Parish, Louisiana. The application was rejected by the jury on the ground the sale of such beverages had been prohibited in the parish by an ordinance adopted pursuant to a 1934 local option election held parish-wide. Plaintiff appealed to the District Court where the matter was heard December 3, 1968, and for written reasons the action of the police jury was affirmed December 23, 1968. From that judgment plaintiff appeals.
The history of the early acts and the jurisprudence prior to federal prohibition became pertinent to the current situation after repeal of national and state prohibition laws in 1933. The repealing acts had the effect of leaving the entire State of Louisiana “wet”. The Louisiana Legislature, by enactment of Act No. 2 of the 1933 Extra Session, regulated the sale of beer and other beverages of low alcoholic content by providing that a parish or municipality could hold an election and, if the voters so decided, the sale of “beer” could be prohibited. There was no provision for an election on a ward basis.
By Act 15 of 1934 the legislature provided for local option elections in a parish, ward or municipality to determine whether sales of beverages containing more than 6% alcohol would be prohibited. In December, 1934, the entire Parish of DeSoto voted “dry”.
*895 The legislature next enacted Act No. 17 of the First Extra Session of 1935, consolidating the provisions and replacing the two previous acts. The rules and regulations for holding all local option elections to be held thereafter were set forth. In 1936 there was an election in Ward Five of DeSoto Parish on the following proposition :
“Shall the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, securing, and consuming of beer, porter, ale, fruit juices, wine and other alcoholic liquor, of an alcoholic content greater than Y2 of l'% by volume but not exceeding 6% of alcohol by volume be licensed or permitted in Ward 5 of DeSoto Parish, Louisiana ?”
A majority of the votes cast in the election were in the affirmative. It is appellant’s contention that by the election, and the ordinance adopted pursuant thereto, the voters of Ward Five “withdrew the power previously granted the Police Jury insofar as it affected Ward Five.” He further contends it is not a question of a ward “emancipating” itself from the effects of a parish-wide election but, rather, whether a ward can subsequently withdraw the “dry” authority.
The issue presented is one of law and requires a determination of the validity of the 1936 Ward Five election; that is, whether it had the effect of superseding the prior parish-wide election prohibiting sales of beer in DeSoto Parish.
The question of whether this court can now order issuance of a 1968 beer license to plaintiff is moot. See Hines v. Village of Goldonna (La.App.3 Cir.1961), 136 So.2d 140; Spinato d/b/a El Morocco Bar & Lounge v. Lowe, Collector of Revenue for the City of New Orleans (1960), 239 La. 604, 119 So.2d 480. However, in light of the joint request by counsel for appellee and appellant that we not dismiss the case as moot, we choose to address ourselves to the correctness vel non of that portion of the judgment affirming the action of the police jury. Barlotta v. Jefferson Parish Council, et al. (La.App.4 Cir.1968), 212 So.2d 220.
It is conceded there is no record of any beer permits being issued in Ward Five since the 1936 election. It is urged, however, that there was no obstacle to the issuance of such a permit, and the denial thereof deprives plaintiff of a right to which he is entitled. It is further agreed there have been no cases squarely deciding the issue now before the court and, as a consequence, we feel it necessary to examine first the language of Act 17 of 1935, which provides, in part, as follows:
AN ACT
Providing for the exercise of local option in the parishes, wards and municipalities of the State to determine whether or not alcoholic or intoxicating liquors, as herein defined, shall be produced, manufactured, rectified, blended or handled, sold, used, distributed, stored or consumed, otherwise than when prescribed by a licensed physician as a medicine, in such parishes, wards or municipalities; providing for elections in respect thereto; and, in order to make local option effective, authorizing the governing authorities of parishes and municipalities to prohibit the traffic in such liquors and to prescribe penalties for the violation of their ordinances, and repealing conflicting portions of Act No. 2 of the Extra Session of 1933, approved March 24, 1933, and of Act No. 15 of 1934, approved July 12, 1934.
Section 1. Be it enacted by the Legislature of Louisiana, That, if any parish, ward or municipality, at an election held for the purpose, which shall be conducted as nearly as possible in accordance with the election laws of the State, shall, by a majority vote of its duly qualified electors voting at any such election, determine that the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing or consuming of al *896 coholic or intoxicating liquors as defined in Section 2 of this Act, otherwise than when prescribed by a licensed physician as a medicine, in such parish, ward or municipality shall not be licensed or permitted therein, such business shall not be therein licensed or permitted.
Section 2. That the words “alcoholic or intoxicating liquors”, as used in this Act, shall be deemed and held to include:
(a) Beer, porter, ale, fruit juices, wine, or other alcoholic liquors, of an alcoholic content greater than one-half of one per centum of alcohol by volume, but not exceeding six per centum of alcohol by volume;
(b) Malt, vinous, spirituous, alcoholic, or intoxicating liquors containing more than six per centum of alcohol by volume.
That at any election held under the authority of this Act propositions in respect to the traffic in all such liquors defined in the above paragraphs (a) and (b) of this section, or in respect to either those defined in paragraph (a) or those defined in paragraph (b), may be submitted to the electors. Provided * * * (this portion applicable only to liquors prescribed by licensed physician).
Section 3. (relates only to the sale of liquor when prescribed by a licensed physician)
Section 4. That an election to determine whether or not the aforesaid business shall be licensed or permitted in any parish, ward or municipality in the State shall be ordered by the governing authority of such parish or municipality only upon petition of twenty-five per centum (25%) of the duly qualified voters of such parish, ward or municipality, to be certified by the Registrar of Voters. No election on any such question shall be held oftener than once a year. Whenever an election has been held and the majority of the votes cast in a parish, or in a ward election if only a ward election has been held, shall be against permitting the sale or disposition of such liquors of an alcoholic content in excess of six per centum by volume within such parish or ward, then said vote or decision in such parish or ward election shall control the action of any ward, city or town within the limits of said parish or ward, as the case may be.
If at any such election on the question of whether or not such liquors of an alcoholic content of more than one and one-half per centum and not exceeding six per centum by volume shall be sold a majority of the qualified electors of such municipality voting at such election shall, in either a parish-wide, ward or strictly municipal election, determine that the business voted upon may be conducted in such municipality, such business may be conducted therein until a majority of the qualified electors of such municipality voting at a subsequent election determine to the contrary * * *. (omitted portion deals with manner of separate determination of results in the municipality voting in a parish-wide or ward-wide election.)
Sections 5 & 6 (deal with manner of conducting such elections and provision for imposition of penalties for violations).
Section 7. (Repealing clause) * * * Provided that this repeal shall not affect the validity of any local option election heretofore held, or any ordinance adopted as the result thereof, under existing laws, and the one year interval between elections, as above provided, in relation to elections already held, shall begin to run from the date such elections were held
In Frazier v. Police Jury of Winn Parish, 194 La. 1049, 195 So. 535 (1940), the Louisiana Supreme Court had occasion to pass on the provisions of Act 17 of 1935. Where two wards in Winn Parish had voted “dry” in local option elections in 1935, the court held the police jury could, nevertheless, call a parish-wide election which would be binding on each ward in the parish.- There was no determination of the question of whether a subsequent ward *897 election could have been held “freeing” the ward from the effects of the prohibition effected by the parish-wide election. However, the court reviewed the earlier cases and quoted with approval the language in Police Jury of Avoyelles v. Town of Mansura, 119 La. 300, 44 So. 23, 24, interpreting the Act of 1902, a statute similar to the 1935 act quoted above:
“While we must admit that, if the person who wrote this amendment has succeeded in securing brevity, he has done so at the expense somewhat of clearness and precision, yet the meaning is plain enough, and it is that the effect of an election in any of the enumerated subdivisions continues until a vote to the contrary has been taken in the same subdivision, subject, always, to the paramount authority of the greater subdivision over the lesser, when favoring prohibition. * * * The idea is that in this matter of license, or no license, the same authority which has made a regulation shall be required to change it; provided, always, that where the greater subdivision has favored prohibition its action shall bind the lesser.
* * * * * *
“Counsel say that the interpretation, according to which the effect of an election in any subdivision can be done away with only by another election in the same subdivision, would put it in the power of the lesser subdivision to control the greater by holding their election first. Counsel here assume that the holding of an election by a lesser subdivision would preclude the subsequent holding of an election by the greater; but there is nothing in the statute to justify such an assumption. Plainly under the terms of the statute, any action on the part of the lesser subdivision is at all times subject to the paramount right of the greater to proceed just as if the lesser had not acted, pretty much in the same way that state legislation is no obstacle to paramount federal legislation. * * *
“In Hagens v. Police Jury of Caddo Parish, 121 La. 634, 46 So. 676, 678, local option elections had been held in six wards of the Parish, the results of which were in favor of prohibition. An election was later called and held throughout the parish, including the six ‘dry’ wards. The plaintiffs, who were engaged in the liquor business, contended that the Police Jury, in such a parish-wide election, was without authority to have an election held in these ‘dry’ wards until other elections were held in each of the wards that had already voted ‘dry’. In deciding the case, the Court said:
‘After repeated suits and the last act upon the subject of local option, the authority to call elections has expanded from what it was originally. The parishes can hold elections at the time authorized in all of the wards, although a number of these wards have already acted upon the subject. Police Jury of Avoyelles v. Town of Mansura, 119 La. 300, 44 So. 23.’
“The police jury arrived at the conclusion in this case that an election should be held in the whole parish. The ordinance was legal.
“The police jury binds the lesser wards of the parish. The result as to the ward is not to be lightly interferred with; but, if an election is timely held throughout the parish, then the result binds the whole parish.
“The police jury cannot be compelled to submit to the wish of one or two wards, if it in the exercise of its legitimate discretion, concludes that an election shall be held in the whole parish.”
As noted in brief of amicus curiae, if it should be held that a ward election, conducted subsequent to the parish election with a contrary result, would bind the parish, the latter body would be forced to again hold a parish-wide election to reenact the prohibition. This could result in yearly elections by the parishes to nullify *898 the results of a ward election. Such a “carousel” of elections was frowned upon in the second Mansura decision.
Referring further to Act 17 of 1935, we conclude the provisions of Section 1 thereof, if read alone, would have permitted elections looking only to the prohibition of the sale of either type of liquor as defined in subsections (a) and (b) of Section 2. However, Section 4 established a right and a method whereby municipalities would “determine that the business voted upon may be conducted in such municipality”. (Emphasis added). This right to vote contrary to the parish or ward in an election called by those bodies or by the municipality itself has been termed the power of “emancipation”. Nowhere in the act is a ward given the specific right to vote “wet”, either by a separate election or in conjunction with an election in a larger area. To the contrary, a municipality is especially granted this right either in a separate election or in conjunction with a ward or parish election embracing its area.
We conclude the ward election did not supersede the previous parish-wide election prohibiting the sale of beer. Accordingly, the judgment is affirmed at appellant’s cost.